GREATER BOSTON BOWLING ALLEYS, INCORPORATED, *vs.* OLYMPIA THEATRES, INCORPORATED.

Middlesex. January 19, 1926. — May 24, 1926.

Present: PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Landlord and Tenant*, Eviction.

There can be no eviction from real estate without a wrongful interference with possession.

If a lessor of premises to be used as a bowling alley, following a fire in the building and purporting to act under a provision of the lease that gave him the right to terminate it in case the premises or any part thereof should be destroyed or damaged by fire so that the same should be thereby rendered unfit for use or habitation, gave a notice to the lessee to vacate and, although neither the premises nor any part of them was damaged by fire so as to be made unfit for use in the bowling alley business, the lessee proceeds to vacate, stating that in so doing he in no way was waiving rights, which the terms of the lease gave him, to compensation for cancellation of the lease, and, after a month, during which he paid no rent and there was no interference with him by the lessor, he fully vacates and delivers the keys to the lessor, who denies his right to compensation, the lessor cannot be found to have done anything which was an eviction of the lessee or entitled the lessee to maintain an action of tort against the lessor on that ground.

CONTRACT OR TORT. Writ dated July 20, 1923.

In the Superior Court, there was a trial before *Hammond*, J., when a count in the declaration in contract was waived and the plaintiff relied only on a count in tort for eviction. Material evidence and a special finding by the jury are described in the opinion. By order of the judge, a verdict for the defendant was entered. The plaintiff alleged exceptions.

The case was submitted on briefs.

*P. R. Ammidon, A. I. Bicknell, & G. S. Ryan*, for the plaintiff.

*P. D. Turner*, for the defendant.

SANDERSON, J. This is an action of tort for eviction. A count in contract was waived. The defendant, after making a general denial, sets up in its answer a termination of the lease by it after the premises were so destroyed or

damaged by fire as to be unfit for use and habitation and a
surrender of the lease by the plaintiff.   The lease was of a
part of the basement of the building for the conduct of a
bowling alley business only and for a period beginning
October 15, 1919, and ending January 1, 1928, with a right,
on the part of the lessor, to cancel it upon giving thirty days'
notice and paying the damages therein specified, and it gave
the lessor the right to terminate the lease in case the premises
or any part thereof should be destroyed or damaged by
fire so that the same should be thereby rendered unfit for
use or habitation.   The jury, by their answer to a question
propounded by the trial judge, found that neither the prem-
ises nor any part of them were damaged by fire so as to be
made unfit for use in the bowling alley business.   Thereupon
the judge allowed the defendant's motion for a directed
verdict and the plaintiff excepted.

On February 26, 1923, the day after the fire, the defendant
notified the plaintiff that, in accordance with the provisions
of the lease relating to its termination in the event of damage
by fire, the lease was thereby terminated.   The plaintiff
in reply, February 28, 1923, stated that it was taking im-
mediate steps to vacate the premises and was doing this
with the idea, as suggested by the defendant's agent, of facili-
tating the defendant's work in making necessary repairs;
but stating that in so vacating it was in no way waiving
rights which it had to compensation for the cancellation of
the lease.   There was no other correspondence until April 2,
1923, when the plaintiff wrote the defendant that its bowling
alleys had been entirely removed from the premises, enclosed
the key, requested the return of the deposit held as security
for the rent with interest, and demanded payment of the
amount to which it was entitled because of the cancellation
of the lease.   In reply to this letter the defendant wrote that
it would arrange for the return of the deposit but could not
agree that the plaintiff was entitled to any money on account
of the termination of the lease, and stated that the lease was
terminated on account of a fire which occurred on the prem-
ises, a condition provided for in the lease for its termination.
The deposit was returned later.

Oral testimony was introduced upon which the jury could have found that the representative of the plaintiff stated to a representative of the defendant, soon after the fire, that he understood the premises could very quickly be put in shape for bowling and the defendant's agent said that it had been dissatisfied with conditions and wanted the tenant out as soon as possible; that the plaintiff's agent replied that the defendant as owner and lessor had the last word on the subject and the plaintiff would get out as soon as it could; that the plaintiff ordered the bowling alleys removed and did not occupy the premises after the fire; that it did not occur to the plaintiff to resist when ordered out; that it knew the defendant could put the plaintiff out by some proceeding which it might bring; that it did not weigh the legal possibilities of the situation; that there was no interference on the part of anybody connected with the defendant as to the plaintiff's removal of the alleys; that from the time of the fire until April 2, the plaintiff was trying to get the alleys out and that no rent was paid by the plaintiff after the fire.

The agent of the defendant testified that he told the plaintiff's agent that the notice from the defendant would have to be complied with; that the fire warranted notice of termination; that the defendant did not do anything to interfere with the possession of the premises by the plaintiff until the keys were returned; and that after the keys were returned the defendant took possession and occupied the leased premises.

"To constitute an eviction . . . there must either be an actual expulsion of the tenant, or some act of a permanent character, done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises or some part of it, to which he yields, abandoning the possession within a reasonable time." *Bartlett* v. *Farrington*, 120 Mass. 284. *Skally* v. *Shute*, 132 Mass. 367. "To constitute a constructive eviction . . . it must affirmatively appear that by his intentional and wrongful act the landlord has deprived the tenant of the beneficial use and enjoyment of the whole, or a part of the leasehold." *Taylor* v. *Finnigan*, 189 Mass. 568, 573. *Smith* v. *Tennyson*, 219

Mass. 508, 510.   *Hopkins* v. *Murphy*, 233 Mass. 476.   *Conroy* v. *Toomay*, 234 Mass. 384.   There can be no eviction without a wrongful interference with possession.   *Mitsakos* v. *Morrill*, 237 Mass. 29, 33.

The cases which hold that a tenant might yield to threat of expulsion by the owner of title paramount without losing his remedy on covenants against his lessor have no relevancy to the case to be decided.   See *King* v. *Bird*, 148 Mass. 572. The finding of the jury conclusively shows that the defendant had no right to terminate the lease because of the fire and upon the evidence it did not attempt to terminate it for any other reason.   It cannot be successfully contended that there was a cancellation upon the payment of a stipulated sum under the provisions of the lease.   See *Harrison* v. *Jordan*, 194 Mass. 496.   The defendant did not enter into possession of the property until after the plaintiff delivered the key with notice that the premises had been vacated. Until then the plaintiff had the use and control of them. The defendant did nothing which could be found to be an eviction.

*Exceptions overruled.*