Lu, John T., J.
INTRODUCTION
Plaintiff, Apple D’Or Tree, Inc. (Apple D’Or), a commercial lessee of land in Webster, Massachusetts, brought this action against the lessor defendant, Webster-Dudley Sand & Gravel, Inc. (Webster-Dudley). Apple D’Or alleges that Webster-Dudley, without authorization, converted equipment and materials belonging to it, engaged in unfair and deceptive practices, and breached the lease by failing to honor Apple D’Or’s option to purchase the leased land.
After Apple D’Or filed its complaint, Webster-Dudley brought a summary process action against Apple D’Or in the Dudley District Court, to recover possession of the land and rent owed under the lease agreement. The District Court ordered Webster-Dudley’s summary process complaint consolidated with this case. Webster-Dudley now moves for partial summary judgment on its summary process complaint.[2]
Finding that there is no issue of material fact as to whether Apple D’Or was justified in withholding rent payments under the commercial lease, the court allows Webster-Dudley’s motion for partial summary judgment. •
BACKGROUND
On March 31, 2006, in order to undertake stump grinding operations, Apple D’Or entered into a lease with Webster-Dudley to rent ten acres of land in Webster, Massachusetts.[3] The lease term was for twenty years and the $50,000 rent was payable annually, on April 1st. The lease also provided that Apple D’Or would lease one bay in Webster-Dudley’s garage for $10,000 per year. In addition, the lease contained an option for Apple D’Or to purchase the property for one million dollars.
Apple D’Or’s stump grinding operation was noisy and neighbors complained to the Town of Webster. The Town ordered Apple D’Or to cease stump grinding activities and brought an action in the Land Court to enforce its order. On July 27, 2007, the Town of Webster and Apple D’Or entered into an agreement for judgment, which permanently enjoined Apple D’Or from tree stump grinding without the Town’s permission.
On March 19, 2007, Apple D’Or exercised its option to purchase the ten acres from Webster-Dudley for one million dollars. Webster-Dudley, however, on March 22, 2007, refused to proceed with the sale claiming that Apple D’Or had breached its rental obligations by failing to pay rent.
Apple D’Or paid Webster-Dudley $50,000 on April 1,2006 for land rent in 2006.[4] Apple D’Or has not paid the $50,000 for the land rent or the $10,000 garage rent for 2007.
DISCUSSION
Webster-Dudley argues that it is entitled to summary judgment on its summary process complaint because Apple D’Or inexcusably failed to pay rent due under the lease agreement and it committed waste on the property. According to Webster-Dudley, the doctrine of dependent covenants does not operate to allow Apple D’Or to withhold rent due under a commercial lease. In response, Apple D’Or contends that it did not *50 commit waste on the property and further, it was excused from paying rent in 2007 due to Webster - Dudley’s wrongful conduct in refusing to honor the option to purchase.
I. Standard of Review
Summary judgment will be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The court will interpret all inferences in the light most favorable to the nonmoving party. Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990). The opposing party, however, cannot rest on mere assertions of disputed facts from his pleadings to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
II. Rule of Dependent Covenants
Massachusetts’ courts traditionally have not extended the protections available to parties to a residential lease, such as the warranty of habitability and the covenant of quiet enjoyment, to parties to a commercial lease. See generally, Chausse v. Coz, 405 Mass. 264, 266 (1989) (declining to extend the obligation to maintain property in a reasonably safe condition to the commercial lessor); Young v. Garwacki, 380 Mass. 162, 171 n.12 (1980) (limiting lessor’s duty to exercise reasonable care in maintaining leased premises to the residential situation); Agustynowicz v. Bradley, 25 Mass.App.Ct. 405, 407-08 (1985) (commercial lessor had no duty to maintain and repair faulty garage door).
Under the common law, the purpose of a commercial lease was the right to possess the land. See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 189 (1973) (“The right to possession of the land constituted the chief element of the [landlord tenant] exchange”). The basic rule was that a tenant was required to pay rent so long as he was in possession of the land. See id. The only time the tenant was relieved of the obligation was when the tenant lost possession of the land through actual or constructive eviction. See e.g., Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 127 (1959) (tenant allowed to terminate lease and discontinue payment of rent based on landlord’s constructive eviction in failing to provide light, heat, power, and elevator service). The lessee’s obligation to pay rent was distinct from the lessor’s duty to make repairs and maintain the premises. See Royce v. Guggenheim, 106 Mass. 201, 203 (1870). The remedy for a landlord’s breach of a promise to make repairs was to seek damages; terminating the lease and withholding rent were prohibited. See id. This is the rule of independent covenants.
In the early nineteenth centuiy, the rule of independent covenants began to lose favor in the residential context; states began adopting statutes which permitted a landlord to evict a tenant if the tenant failed to pay rent, and, through the warranty of habitability, a tenant gained the right to withhold rent where the landlord failed to maintain the premises as promised. See Wesson v. Leone Enterprises, Inc., 437 Mass. 708, 717-18 (2002) (internal citations omitted). The rule of independent covenants, however, for many years was still applied to commercial leases.
In Wesson, the Supreme Judicial Court abandoned the common-law rule of independent covenants for commercial leases and adopted a limited mutually dependent covenant rule from the Restatement (Second) of Property (Landlord and Tenant) §7.1 (1977):
Except to the extent the parties to a lease validly agree otherwise, if the landlord fails to perform a valid promise contained in the lease to do, or to refrain from doing, something . . . and as a consequence thereof, the tenant is deprived of a significant inducement to the making of the lease, and if the landlord does not perform his promise within a reasonable period of time after being requested to do so, the tenant may (1) terminate the lease . . .
Id. at 720.
By adopting this mutually dependant covenant rule, the Supreme Judicial Court determined that the purpose of the modem commercial lease was to secure the right to occupy improvements on the land, rather than the land itself. Id. This mle gives a commercial tenant a remedy for a landlord’s breach of a covenant that was a “significant inducement to the tenant’s entering the lease in the first instance,” but did not rise to the level of actual or constructive eviction. Id. at 721-22.
The Supreme Judicial Court, however, did not adopt the Restatement’s second provision, which allows a tenant to withhold rent. By failing to adopt all the provisions of the Restatement, the Supreme Judicial Court specifically “limited the mle of dependent covenants in commercial leases,” to allow only termination of the lease, not rent withholding. Shawmut-Canton LLC v. Great Spring Waters of America, Inc., 62 Mass.App.Ct. 330, 338-39 (2004); see also Kinko’s Inc. v. Cummings Property, LLC, Civil No. 005438 (Mass.Super.Ct., Dec. 17, 2002) (Lauriat, J.) (landlord’s failure to obtain building permits as set forth in the lease agreement authorized tenant to terminate the lease). Only where the breach rises to *51 the level of actual or constructive eviction is the tenant entitled to withhold rent. Wesson, 437 Mass. at 713, citing Shindler v. Milden, 282 Mass. 32, 33-34 (1933); see also Boston Hous. Auth., 363 Mass. at 186 (rent withholding allowed when leased premises are uninhabitable as long as statutory notice requirements are met). In contrast, the remedy for any breach of a covenant that was significant to the tenant’s entering into the lease is the right of the tenant to terminate the lease agreement. Wesson, 437 Mass. at 720 (emphasis added).
Webster-Dudley’s breach of the option agreement does not rise to the level of actual or constructive eviction. In order for there to be an eviction, “there must either be an actual expulsion of the tenant or some act of a permanent character, done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises to which he yields, abandoning the premises within a reasonable time.” Bartlett v. Farrington, 120 Mass. 284, 284 (1876); see also e.g., Northern Assoc, v. Kiley, 57 Mass.App.Ct. 874, 884-85 (2003) (periodic heat problems, poor maintenance of common areas, debris from a broken skylight and construction dust insufficient to establish constructive eviction).
The law requires substantial or ongoing interference with the tenant’s use of the leased properly. Compare Westland Hous. Corp. v. Scott, 312 Mass. 375, 382 (1942) (smoke, soot, and fumes from a defective oil burner entering an apartment over a three-month period, causing illness to the tenant and damage to clothing and furniture, constituted constructive eviction), and Burt, Inc., 340 Mass. at 127 (landlord’s failure to provide any power, electricity, lights, heat, or elevator service to commercial premises constituted constructive eviction); with Sims v. Mason, 361 Mass. 881, 881 (1972) (failure to provide proper cleaning services, suitable heat and air conditioning, and promised improvements, while breaches of the lease, were insufficient to demonstrate constructive eviction). Webster-Dudley’s failure to honor the option agreement did not substantially interfere with Apple D’Or’s use of the rented premises and cannot constitute constructive eviction.
Webster-Dudley’s breach may be considered a breach of a promise that was a “significant inducement” for Apple D’Or in entering into the lease; however, even if true, Apple D’Or’s sole remedy, under Wesson, is to terminate the lease and seek damages. Apple D’Or was not entitled to withhold the rent payments owed to Webster-Dudley.[5]
ORDER
The defendant Webster-Dudley Sand and Gravel, Inc.’s Motion for Partial Summary Judgment as to its Summary Process complaint is ALLOWED.

 Webster-Dudley’s summary process complaint from the District Court was given docket no. 07-1321.

 Before the agreement, Apple D’Or and Webster-Dudley entered into two lease agreements. On March 29, 2004, the parties entered into a one-year agreement for Apple D’Or to lease ten acres for $50,000 with an option to renew the lease for ten years. On February 1, 2005, Apple D’Or formed a second lease agreement for the same ten acres at the same rate. In the second agreement, Apple D’Or also rented a section of Webster’s garage for an additional $10,000.

 The parties dispute whether Apple D’Or fully paid the $10,000 rent due in 2006 for the garage bay. Apple D’Or asserts it was fully paid, while Webster-Dudley claims that Apple D’Or paid only $6,000 of the $ 10,000 due, and still owes $4,000.

 As the Court has determined that Apple D’Or was not entitled to withhold rent payments, and grants Webster-Dudley’s motion for partial summary judgment on this basis, the court need not address Webster-Dudley’s contention that Apple D’Or committed waste on the property.